UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MELISSA LUONG,<br><br>Plaintiff,<br><br>v.<br><br>VANDERBILT UNIVERSITY,<br><br>Defendant. | ) | NO. 3:25-cv-01351<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION**

This case is a single-plaintiff, single-defendant action. In her complaint (Doc. No. 1, "Complaint"), Plaintiff, Melissa Luong ("Plaintiff" or "Ms. Luong"), has set forth allegations involving alleged disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, retaliation in violation of the ADA, as well as alleged breach of contract.

Pending before the Court is "Vanderbilt University's Motion to Dismiss and Memorandum of Law in Support" (Doc. No. 23, "Motion"), filed by Defendant, Vanderbilt University ("Defendant" or "Vanderbilt"). Via the Motion, Vanderbilt requests "[p]ursuant to [Federal Rule of Civil Procedure] 12(b)(6) . . . that this Court dismiss Plaintiff's Complaint." (*Id.* at 1). Plaintiff has filed a response in opposition to the Motion (Doc. No. 24, "Response"), to which Defendant filed a reply (Doc. No. 25, "Reply").

Notably, the Court previously issued an order (Doc. No. 21), together with a corresponding memorandum opinion (Doc. No. 20) that denied Plaintiff's "Motion for Temporary Restraining Order & Preliminary Injunction" (Doc. No. 18, "Motion for Temporary Injunction"). Relevant to

part of the discussion below, that motion (unlike the instant Motion) was an *evidentiary* motion; it needed to be (and was) resolved based on what Plaintiff's evidence—*as opposed to Plaintiff's allegations in the Complaint*—did or did not show (plus whatever was judicially noticeable). (Doc. No. 20 at 2 n.2). By contrast, as discussed below, the instant Motion needs to (and will) be resolved based solely on the allegations of the Complaint, plus whatever limited additional information can be considered in connection with a Rule 12(b)(6) motion.

For the reasons described below, the Motion will be denied in its entirety.

## ALLEGED FACTS[1]

This case arises out of a dispute concerning Plaintiff's academic standing in the Community Research & Action ("CRA") Program at Vanderbilt University, Plaintiff's academic advisor (or lack thereof), and certain accommodations to which Plaintiff allegedly is entitled because of her disability. Below, the Court first addresses the identities of the parties to this action, then addresses the factual background underlying this action and the claims that Plaintiff brings via her Complaint.

[1] The facts herein are taken from the Complaint and, consistent with the discussion below of the applicable legal standard, are accepted as true for purposes of the instant Motion. By contrast, legal conclusions and wholly conclusory assertions—consistent with that same discussion below—are *not* accepted as true but rather are qualified herein (as for example by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what Plaintiff *claims* to be true. Throughout this opinion, the Court forgoes any such qualifiers for facts that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true. The Court believes that it has included here all facts that are material, as well as other facts that likely are not themselves material but provide useful context. The Court also notes that it generally has omitted here allegations in the Complaint that are not factual allegations but rather subjective verbal characterizations, legal conclusions, and the like; the Court, however, touches on some of these below and is aware of (and understands the function and purported significance of) all of them.

1. <u>The Parties</u>[2]

Plaintiff is a student "enrolled in Vanderbilt's [Ph.D.] CRA [Community Research & Action] Program" (Doc. No. 1 at ¶ 9), which is "in the Department of Human and Organizational Development [("HOD")]." (*Id.* at ¶ 1). At relevant times, Plaintiff's academic advisor was Dr. Ashmeet Oberoi ("Oberoi" or "Dr. Oberoi"), (*id.* at ¶ 21), until Vanderbilt removed Oberoi as Plaintiff's advisor "[a]t some point between April 2025 and October 2025." (*Id.* at ¶ 58).

Vanderbilt "is a private university that receives federal financial assistance within the meaning of Section 504," (*id.* at ¶ 5), and "operates places of public accommodation within the meaning of Title III of the ADA." (*Id.* at ¶ 6).[3]

2. <u>Relevant Vanderbilt Documents</u>[4]

The CRA Program Student Handbook (Doc. No. 1-1), dated August 2024, states that as needed, the faculty may place a student on probation using the CRA Progressional Performance Review ("PPR") requirements during the annual review. (Doc. No. 1-1 at 3). The CRA Program's student probation policy (Doc. No. 1-2) is further outlined in a written policy published on

---

[2] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

Also of note, when the Court cites to a document that has enumerated paragraphs, but omits a paragraph symbol from the citation, the citation is to a page and not to a paragraph.

[3] The upshot of these allegations is the legal conclusion that, as Plaintiff puts it in her memorandum in support of the Motion for Temporary Injunction, Defendant is an entity "subject to Section 504 and Title III of the ADA." (Doc. No. 19 at 1) (citing *Grievances*, https://www.vanderbilt.edu/student-access/grievances (last accessed on November 2, 2026)). The Court accepts that legal conclusion (unlike other legal conclusions in the Complaint) because it follows so naturally from the factual allegations in the Complaint and because the Court can and does take judicial notice that in the just-cited web page, Vanderbilt impliedly recognized that it is subject to Section 504 and the ADA.

[4] Each of the documents referred to herein is an attachment to the Complaint (as reflected herein in the respective citations to them).

Brightspace[5] for the CRA Program's students to access. (Doc. No. 1 at ¶ 16). The "Overview of the CRA Professional Performance Review Requirements" document (Doc. No. 1-3, the "Document") —another of the CRA program's written procedures that is published on Brightspace for students to access —states[6] "that a student receiving a PPR by a CRA Program faculty member will receive written notification of a meeting regarding the professional performance concern ("Notification of Professional Performance Concern") within 30 days of the decision and will have the right to ask questions and provide information related to the professional performance concern." (Doc. No. 1 at ¶ 17). Additionally:

> The process specified in [the Document] also requires that a specific action plan to address the concerns be put in writing and be provided to the student. The [D]ocument further specifies consequences if the student receives more than one Notification of Professional Performance Concern or if the student fails to accomplish the steps in the action plan, including dismissal from the CRA Program. The [D]ocument further clarifies that an immediate dismissal from the CRA Program is only appropriate in "rare cases that a CRA student egregiously violates Vanderbilt . . ., HOD, or CRA policies, professional ethics, and/or laws."

(*Id.*).[7]

3. <u>Case-Specific Factual Background</u>

Plaintiff enrolled in Vanderbilt's CRA Program in or about August 2022. (*Id.* at ¶ 12). Through June 2024, Plaintiff maintained a 4.0 GPA in her course work and received positive

---

[5] The Court gathers that Brightspace is the online course management system used by Vanderbilt and its students.

[6] An observation is warranted regarding the sentence to which this footnote is appended. The Complaint uses, in this precise context, the word "promises" rather than "states." (Doc. No. 1 at ¶ 17). Vanderbilt takes issue with that word. Whether or not the Document "promises" what the Court has quoted here from paragraph 17 of the Complaint, the Document clearly *states* (albeit not entirely verbatim) what the Court has quoted here from paragraph 17 of the Complaint, which reflects a close paraphrasing of the particular implicated words of the Document.

[7] The language here quoted from paragraph 17 of the Complaint constitutes a fair paraphrasing of particular statements in paragraphs 3, 4 and 5 of the Document. (Doc. No. 1-3 at 4-5).

evaluations as a teaching assistant. (*Id.* at ¶ 13). “Ms. Luong did not receive a PPR or a Notification of Professional Performance Concern from Vanderbilt during her annual review in June of 2024.” (*Id.* at ¶ 18).

Around September 2024, Plaintiff began to experience mental and physical health issues directly related to the stress of an ongoing psychiatric emergency of an immediate family member. (*Id.* at ¶¶ 19-20). On or around September 25, 2025, Plaintiff informed Dr. Oberoi that she was unable to attend a scheduled meeting due to the mental and physical issues that she was experiencing. (*Id.* at ¶ 21). “Dr. Oberoi never raised concerns with Ms. Luong regarding any cancel[]ed advisor meetings during the fall semester regarding Ms. Luong’s inability to attend advisor meetings due to mental and physical issues until the week of final exams in December of 2024.”[8] (*Id.* at ¶ 22). “At that time, Dr. Oberoi emailed Ms. Luong stating that she felt ‘disrespected’ by Ms. Luong and told Ms. Luong that she was no longer allowed to cancel meetings with less than a 24-hour notice unless it was an unavoidable emergency.” (*Id.*).

“Ms. Luong responded by email to Dr. Oberoi, again explaining her ongoing mental and physical issues regarding the crisis of the immediate family member, and offering a solution (an accommodation) that included allowing her to attend advisory meetings and complete other work as needed asynchronously.” *(Id.* at ¶ 23). “However, she received no response from Dr. Oberoi for two months.” (*Id.*). This lack of response exacerbated Plaintiff’s mental and physical issues. (*Id.* at ¶ 24). “On January 2, 2025, Ms. Luong was diagnosed with an anxiety disorder, major depressive disorder, and post-traumatic stress disorder (“PTSD”).” (*Id.* at ¶ 28). Later in January 2025, Plaintiff requested an allegedly reasonable accommodation to allow her to participate in a faculty-advisor relationship that (aspirationally) would accommodate her disability-related needs

---

[8] It is inferable from this part of the Complaint that Plaintiff canceled meetings beyond the particular one that she mentioned, i.e., the one that Plaintiff canceled on or around September 25, 2025.

so that she could meet the CRA Program expectations related to her research and thesis requirements set by Dr. Oberoi. (*Id.* at ¶ 30).

"Vanderbilt's Student Access Office ("SAO"), which handles requests for reasonable accommodations under Section 504 and the ADA, informed Ms. Luong that they could not assist her with accommodations related to her advising relationship." (*Id.* at ¶ 31). "The SAO advised Ms. Luong to reach out to the Graduate and PostDoc Academic Success ("GPAS") program or the HOD department, which houses the CRA program," regarding her advising relationship. (*Id.*). "The only accommodation that was offered by Vanderbilt was assistive technology notetaking, which was not an accommodation requested by Ms. Luong or recommended by her therapist." (*Id.* at ¶ 34).

In a February 28, 2025 meeting with the HOD Department Chair, Dr. Nicole Allen, Plaintiff was not offered any accommodations by Dr. Allen, who instead only gave approval for Plaintiff to look for another advisor and to pursue a new thesis topic. (*Id.* at ¶¶ 35, 36). Ms. Luong was concerned that Dr. Oberoi's research direction and expectations (including that Ms. Luong continue to run additional research models instead of moving forward with writing her thesis) were delaying her (Plaintiff's) progress in writing her thesis. (*Id.* at ¶ 37). "In late January 2025, Ms. Luong also began experiencing intense pain in her jaw and neck. After multiple medical consultations and tests, a surgical biopsy was scheduled for March 19, 2025 to determine if Ms. Luong had lymphoma, a type of cancer. [] Ms. Luong provided Dr. Oberoi with medical documentation of her health issues and informed her of the need for an extension to thesis research deadlines." (*Id.* at ¶ 38-39). Plaintiff's biopsy was negative, as she informed her professors and Dr. Allen on or about April 1, 2025. (*Id.* at ¶ 41-42). The cause of her pain remains undetermined, though an autoimmune disorder or Lupus disease is suspected. (*Id.* at ¶ 43).

On or around April 25, 2025, Ms. Luong emailed Dr. Allen and Dr. Brian Christens, the CRA Director of Graduate Studies, requesting assistance with finding a new advisor. (*Id.* at ¶ 44). Dr. Christens emailed Plaintiff back, "informing her that she could delay her Program of Studies Committee ("POS") meeting, required at least annually, until the first two weeks of the fall semester since she was in the process of trying to switch advisors." (*Id.* at ¶ 45). "Ms. Luong never received an annual review by the CRA Program faulty, a PPR, or a Notification of Professional Performance Concern from Vanderbilt at the end of the 2024-2025 school year." (*Id.* at ¶ 46). Despite her request for assistance due to her disability-related needs, Ms. Luong never received support from Dr. Allen or Dr. Christens in securing a new advisor; instead, Dr. Allen and Dr. Christens actually discouraged some faculty from taking on Ms. Luong as an advisee, and Dr. Oberoi continued to be a "major advisor" for Ms. Luong through May of 2025 and indeed was never "dropped [by Plaintiff] as her advisor." (*Id.* at ¶ 47-48, 50, 55). Instead, "[a]t some point between April 2025 and October 2025, Vanderbilt formally removed Dr. Oberoi as Ms. Luong's major advisor, without notifying Ms. Luong of such decision." (*Id.* at ¶ 58).

Vanderbilt's decision-makers "referr[ed] to Plaintiff's disability-related needs and requests for accommodations as 'musings of her therapist' and otherwise minimiz[ed] or discredit[ed] the professional judgment of Plaintiff's treating provider." (*Id.* at ¶ 49).

Plaintiff was dismissed from the CRA Program on or around July 24, 2025, via an emailed letter. (*Id.* at ¶ 51). Vanderbilt's Graduate School supported the decision to dismiss Plaintiff. (*Id.* at ¶ 61). The letter attributed Plaintiff's dismissal to her (purported) failure to find a "new advisor" and her inadequate progress towards the PhD degree. (*Id.* at ¶ 52). This was despite Dr. Allen "admitt[ing] in written communications that Vanderbilt lacked documentation to support dismissing Ms. Luong from the CRA Program," (*id.* at ¶ 60), and the fact that "prior to her

dismissal, Ms. Luong never received a professional performance review indicating concerns with her performance, . . . was never placed on probation, and . . . never engaged in egregious conduct that would warrant immediate dismissal from the CRA program."[9] (*Id.* at ¶ 62).

The story did not end with Plaintiff's notification of her termination from the CRA Program, because Plaintiff appealed her dismissal from the CRA Program. (*Id.* at ¶ 63). Her first appeal was submitted on July 29, 2025, (*id.* at ¶ 64), but Dr. Allen denied it the next day, (*id.* at ¶ 65), albeit while "confirm[ing] that Vanderbilt would waive the thesis CRA Program requirement and provide Ms. Luong with a master's degree in December of 2025." (*Id.* at ¶ 66). On August 28, 2025, Plaintiff submitted her second appeal, which was denied five days later by Jeannette Mancilla Martinez, Associate Dean for Academic Affairs and Graduate Education. (*Id.* at ¶ 67, 68). "On or around [the next day,] September 3, 2025, Ms. Luong's legal counsel also engaged in communications with Vanderbilt regarding Ms. Luong's [allegedly] inappropriate dismissal from the CRA Program." (*Id.* at ¶ 69).

On September 19, 2025, Ms. Luong submitted her third appeal, which was granted on October 15, 2025, by Dr. Andrea Page-McCaw, Associate Dean for Academic Affairs for the Vanderbilt Graduate School, on the grounds that the CRA Program failed to notify Ms. Luong of a deadline to obtain a new advisor, did not follow its published policies, and did not follow the Graduate School's policies in notifying Ms. Luong of failure to meet expectations about progress to her Ph.D. (Doc. No. 1 at ¶ 70-71; Doc. No. 1-4 at 2). "Dr. Page-McCaw also admitted that Ms. Luong did not receive any unsatisfactory grades, was not placed on probation, did not receive any

---

[9] There are aspects of the latter quote that are arguably less factual and more subjective. Specifically, whether a performance review contains something "indicating concerns," and whether conduct is "egregious" can be a matter of verbal characterization and not raw fact. But on balance, the Court finds it appropriate to deem the allegations here as true, especially given the absence of any assertion by Vanderbilt that the Court should proceed otherwise in this regard.

warnings in her annual reviews, and did not receive any Notice of Professional Performance Review prior to her dismissal from the CRA Program" and "confirmed that Ms. Luong's status as a student was on a leave of absence, awaiting a (terminal) master's degree in December 2025." (Doc. No. 1 at ¶ 72-73; Doc. No. 1-4 at 2). Dr. Page-McCaw stated that if Plaintiff was re-admitted into the CRA Program, she would not be awarded a *terminal* master's degree in December 2025, but rather would earn a master's degree *in passing* after she completes the requirements on her way to a PhD. (Doc. No. 1-4 at 3).[10] But despite granting Plaintiff's appeal and thereby overturning Plaintiff's dismissal from the CRA Program, "Dr. Page-McCaw conditioned Ms. Luong's reinstatement into the CRA Program upon her ability to establish an advisory relationship by December 5, 2025." (*Id.* at ¶ 74; Doc. No. 1-4 at 2). "But securing a new advisor . . . is outside [of Plaintiff's] control"—apparently, as far as the Court can tell, because Plaintiff cannot *forc*e anyone to be her advisor, and in fact "two additional CRA Program faculty members have refused to serve as her advisor since her dismissal." (Doc. No. 1 at ¶ 81-82).

Vanderbilt refused both to allow Plaintiff to resume her advising relationship with Dr. Oberoi and to assign Ms. Luong an advisor even though she had requested the assignment of an advisor as an accommodation for her disability. (*Id.* at ¶ 75-76). Evidently dissatisfied at least in part with the outcome of her third appeal, Plaintiff "submitted her fourth appeal to Dr. Cybele Raver, Provost and Vice Chancellor for Academic Affairs, which remains pending." (*Id.* at ¶ 79).[11]

---

[10] As the Court's citation indicates, the Court here has paragraphed (very closely) the applicable text of Dr. Page-McCaw's letter. Perhaps the Court is missing something, but it seems that Plaintiff's paraphrasing of this text (especially given the context of such paraphrasing) paints this text—with entirely inadequate candor—as much more negative (i.e., as better fodder for claiming some grievance) than it actually is, considering that the language seems to contemplate not that Plaintiff be denied a master's degree, but rather that she receive a master's degree en route to a Ph.D.

[11] The status of the fourth appeal as "pending" is as of the time of the filing of the Complaint, which is the relevant time for purposes of the instant Motion.

"[O]ther CRA Program students who failed to meet program deadlines set forth in the CRA Program Student Handbook remained in good standing with the CRA Program."[12] (*Id.* at ¶ 86).

4. <u>Plaintiff's Claims</u>[13]

Plaintiff initiated this action on November 20, 2025 by filing the Complaint (Doc. No. 1). Via the Complaint, Plaintiff brings claims (four in total)[14] in three counts.

First, via Count I, Plaintiff brings a claim for "Disability Discrimination In Violation of Section 504 of the Rehabilitation Act and Title III of the ADA." (*Id.* at 15). Plaintiff alleges (with respect to the first claim in Count I—a claim for failure to accommodate) that Defendant failed "to provide reasonable accommodations after Plaintiff requested [them]," and thereby "excluded [Plaintiff] from, denied her the benefits of, and subjected her to discrimination in its educational programs and activities on the basis of her disability." (*Id.* at ¶ 99). Plaintiff alleges (with respect to the second claim in Count I—a claim for disability discrimination) that Defendant "acted with deliberate indifference by disregarding Plaintiff['s] disability related needs, refusing to provide her with reasonable accommodations, discouraging faculty from serving as her advisor, dismissing her without following Vanderbilt's clearly delineated process for dismissal, falsifying the reasons for her dismissal, removing her existing major advisor, dismissing her from the CRA [P]rogram because of her disability, and engaging in other discriminatory acts and omissions," and that "[b]y

[12] The Court treats this statement as a factual allegation rather than, for example, a mere conclusory assertion that is not entitled to the presumption of truth on a Rule 12(b)(6) motion to dismiss. On the other hand, the Court realizes that the facts set forth in this statement are limited—especially in their value to draw a legally significant comparison between Plaintiff and these "other CRA Program Students"—in that they omit anything about how many students remained in good standing, after what violations of deadlines, and under what circumstances.

[13] From this point onward, the Court herein generally uses the monikers "Plaintiff and Defendant" rather than "Ms. Luong" and "Vanderbilt."

[14] As indicated below, the first count actually sets forth two claims.

refusing to assign Plaintiff an advisor after her dismissal was overturned, [Defendant] further discriminated against [Plaintiff] on the basis of disability and denied her equal access to and participation in the CRA Program." (*Id.* at ¶¶ 100-101).

Second, via Count II, Plaintiff brings a claim for "Retaliation Under the Americans With Disabilities Act." (*Id.* at 16). Plaintiff alleges that "[o]n or about January 2025 and ongoing thereafter, Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations for her disability" and that "Plaintiff further engaged in protected activity when she appealed her dismissal on the basis of discriminatory treatment related to her disability and involved an attorney to advocate for her rights." (*Id.* at ¶ 106). Further, Plaintiff alleges that in retaliation for this protected activity, Defendant took numerous adverse actions against Plaintiff including: "Removing Plaintiff's current advisor, [ ] Oberoi, and then discouraging faculty members from agreeing to serve as Plaintiff's advisor; dismissing [Plaintiff] from the CRA [P]rogram without following Vanderbilt's clearly delineated policies and procedures; conditioning [Plaintiff's] reinstatement to the CRA Program upon her securing a new advisor; delaying and obstructing [Plaintiff's] access to her educational records; and withdrawing [Defendant's] offer to provide Plaintiff with a master's degree if she is reinstated to the CRA Program." (*Id.* at ¶ 107).

Finally, via Count III, Plaintiff brings a claim for "Breach of Contract." (*Id.* at 18). Plaintiff alleges that she and Defendant "entered into a valid and enforceable contract at the time of Plaintiff's admittance into Defendant's CRA Program at Vanderbilt University," and that "[t]he terms of the contract are specifically delineated in the student handbook, CRA and Graduate Studies written guidelines and procedures, and any other related written promises and agreements, which govern the expectations of academic performance, procedures for probation and dismissal, and the rights of students, including the right to reasonable accommodations and feedback on

academic progress." (*Id.* at ¶ 113). Plaintiff alleges that Defendant "breached the contract by failing to perform its obligations under the terms set forth in the student handbook and related academic agreements, including but not limited to: failing to provide Plaintiff with timely and specific feedback regarding any concerns with her academic performance and providing an action plan to correct such concerns, as required by the student handbook and other written documents; and failing to adhere to the probation and dismissal procedures outlined in the student handbook, instead proceeding to dismiss Plaintiff from the CRA Program without following the prescribed procedures for probation and an opportunity to show improvement." (*Id.* at ¶ 114).

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere

consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018). And "district courts [may] take judicial notice of 'public records' without converting a motion to dismiss into a summary-judgment motion. This exception, though, generally allows a court to conclude only that the record exists; the exception does not allow the court to treat all information in the record as true." *Blackwell v. Nocerini*, 123 F.4th 479, 487-488 (6th Cir. 2024) (citation omitted).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). To put it only slightly differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty*., 799 F.3d 530, 537 (6th Cir. 2015)). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

Importantly, and relevant to the instant action, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.[15] That means that a plaintiff need not allege facts specifically indicating that the plaintiff could carry

[15] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

the burden she might ultimately bear under *McDonnell Douglas*. And that is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a prima facie case for purposes of *McDonnell Douglas*. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). The Court (and specifically the undersigned) has explained this in some detail in resolving a motion to dismiss a plaintiff's claims brought under the Tennessee Human Rights Act:

> But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).
>
> This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67

> (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a prima facie case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

*Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020) (Richardson, J.). So as noted in *Keys*, *McDonnell Douglas* ultimately may not apply at all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with). And even if *McDonnell Douglas* would apply at later stages of the case, it cannot sensibly be applied at the pleading stage, and so its requirement of a showing of a prima facie case must not be applied at the pleading stage.

## ANALYSIS

The Court begins its analysis with a here-crucial discussion of: (i) what it can consider on the instant (Rule 12(b)(6)) Motion without converting it into a motion for summary judgment; (ii) *how* it should consider particular things that it can consider; and (iii) what it must not consider on the instant Motion if it is to avoid converting the Motion into one for summary judgment.[16]

Axiomatically, and as discussed above, the Court can consider factual allegations contained in the Complaint itself. And it can consider exhibits attached to the Complaint because those are considered part of the Complaint. *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) ("The federal rules treat [exhibits attached to the complaint] as part of the pleadings."). As is vital in the instant case, the attachments to a complaint—just like the factual allegations in a complaint—should be viewed in the light most favorable to the plaintiff/non-movant. *See, e.g.,*

[16] To be clear, the Court declines to convert the instant Motion into one for summary judgment and thus will avoid doing (i.e., considering) anything that would have the effect of mandating such conversion.

*Ultrafog, Ltd. v. Orr Prot. Sys., Inc.*, No. 21-5909, 2022 WL 3274168, at *3 (6th Cir. Aug. 11, 2022); *Does #1-10 v. Lee*, 608 F. Supp. 3d 588, 593, 598 (M.D. Tenn. 2022).

When considering a Rule 12(b)(6) motion without converting it into a motion for summary judgment, the Court is generally limited to considering these things, i.e., the contents of the complaint and any attachments thereto. *See, e.g., Bosarge v. MS Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015). As indicted above, however, the Court also can consider a document outside the pleadings (such as, for example, a document not attached to the complaint but attached to a defendant's motion to dismiss) that is referred to in the pleadings *and* is integral to the claims. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. But Defendant presented no such documents.

Defendant did, however, rely on exhibits that Plaintiff attached to the Complaint. But in assessing the validity of such reliance, the Court must keep in mind the consequential limitations that it has discussed above.

1. Count I

Via Count I, Plaintiff is really challenging two types of conduct. The first is Defendant's purported failure to accommodate Plaintiff's disability, and the second is Defendant's dismissal of Plaintiff from the CRA Program, purportedly based on her being a person with a disability. (Doc. No. 1 at ¶¶ 99-100). That is to say, in Count I Plaintiff sets forth both a claim for failure to accommodate a disability and a claim for disability discrimination. Below, the Court addresses each of these claims in turn.

*i. Failure to Accommodate*

To state a failure-to-accommodate claim under the ADA, a plaintiff must plausibly allege that that "(1) she was disabled within the meaning of the ADA, (2) she was otherwise qualified for

her position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the defendant failed to provide the necessary accommodation." *Kirilenko-Ison v. Bd. of Educ. of Danville Ind. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020).[17] *See also Penney*, 2024 WL 4350786, at *4-5; *Lawtone-Bowles*,

[17] Notably, in *Kirilenko* the Sixth Circuit described the foregoing elements as those of a plaintiff's prima facie case, 974 F.3d at 669, and not as the elements that must be plausibly suggested in order to state a failure-to-accommodate claim. At first blush, this might seem non-sensical because a failure-to-accommodate claim by its very nature involves direct evidence (and only direct evidence), meaning that the *McDonnell Douglas* framework for establishing a claim via indirect evidence (including an indirect-evidence prima facie case) is simply inapplicable to failure-to-accommodate claims.

But the apparent tension actually is easily resolved. In law, the notion of a prima facie case exists outside of the content of the *McDonnell Douglas* framework; there are other kinds of (and other contexts for the application of) a prima facie case, and the kind of prima facie case applicable to failure-to-accommodate claims is different from the *McDonnell Douglas* kind of prima facie case. That is, if a plaintiff can make out the prima facie case for a failure to accommodate, then the burden shifts to the defendant "to prove that the proposed accommodation would impose an undue hardship." *Brownlow v. Alfa Vision Ins. Co.*, 527 F. Supp. 3d 951, 956 (M.D. Tenn. 2021).

In follows that the establishment of the (five) elements set forth in *Kirilenko* will not necessarily result in the plaintiff prevailing on a claim of failure to accommodate, because the defendant potentially can prevail by establishing the "undue hardship" defense. But in any event, the plaintiff cannot possibly win without establishing those elements. And so the plaintiff must allege in the complaint factual matter plausibly suggesting the existence of each of those elements. *See Penney v. Hetaec, Inc.*, No. 1:24-CV-00009-DCLC-SKL, 2024 WL 4350786, at *4-5 (E.D. Tenn. Sept. 30, 2024) (applying these elements in the context of a Rule 12(b)(6) motion to dismiss); *Lawtone-Bowles v. Franklin Univ.*, No. 2:24-CV-4091, 2025 WL 2314760, at *4 (S.D. Ohio Aug. 12, 2025) (adjudicating a motion for judgment on the pleadings and holding that "[t]o state a claim for failure to accommodate, a plaintiff must allege that she is (1) is disabled, (2) is otherwise qualified for the position or program, with or without a reasonable accommodation, (3) defendant knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) defendant failed to provide the reasonable accommodation."). A plaintiff that does so will survive a Rule 12(b)(6) motion to dismiss because—except perhaps in what surely would be the very rare situation where the "undue hardship defense" somehow is plainly made out by the complaint's allegations and any other information that can be considered on a Rule 12(b)(6) motion—a defendant cannot, at the Rule 12(b)(6) stage, rely on reaching and discharging its burden to show undue hardship to defeat the plaintiff's claim. *Cf. Rackovan v. Pennsylvania State Univ.*, No. 4:25-CV-00603, 2025 WL 3124851, at *3 (M.D. Pa. Nov. 7, 2025) ("However, the burden-shifting framework to determine whether an accommodation was reasonable or whether accommodation would pose an undue hardship is not yet applicable at the motion to dismiss stage." (citing *Miller v. Tithonus Tyrone, L.P.*, No. 3-20-CV-31, 2020 WL 2065941, at *4 (W.D. Pa. Apr. 29, 2020))).

The Court is constrained to make another observation. In other cases, the Sixth Circuit used the term "qualified," rather than "otherwise qualified," to refer to the second element. *E.g., Becker v. Elmwood Loc. Sch. Dist.*, 519 F. App'x 339, 342 (6th Cir. 2013) (citing *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011)). The undersigned has concluded that with respect to the elements of an indirect-evidence prima facie case of disability discrimination under the ADA, the applicable concept is the plaintiff being *qualified* (with or without reasonable accommodation). The undersigned need not dwell herein on the basis for that conclusion, other than to say that the term "otherwise qualified" tends to suggest inappropriately that the

2025 WL 2314760, at *4. The same is required to establish a failure to accommodate under Section 504, as Defendant correctly notes, (Doc. No. 23 at 8-9), and Plaintiff clearly does not dispute. For this reason, although a claim of failure to accommodate in violation of the ADA and a failure to accommodate in violation of Section 504 are technically different claims, the Court herein treats them as a single claim.

A plaintiff "bears the burden of requesting a reasonable accommodation and showing the accommodation is objectively reasonable." *Bolden v. Lowes Home Centers, LLC*, No. 3:17-CV-00741, 2018 WL 4181614, at *6 (M.D. Tenn. Aug. 31, 2018) (citing *Aldini v. Kroger Co. of Mich.*, 628 Fed. App'x 347, 350 (6th Cir. 2015); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007), *aff'd,* 783 F. App'x 589 (6th Cir. 2019)). It follows that for purposes of satisfying the fourth element stated above—that the plaintiff requested an accommodation—the requested accommodation does not count unless it would be a *reasonable* accommodation.

Defendant argues that "Plaintiff's claims [in Count I] fail because she cannot establish that she was otherwise qualified for her position with or without accommodation." (Doc. No. 23 at 9).[18] In so arguing, Defendant relies on an attachment to Plaintiff's complaint, namely Dr. Page-McCaw's letter (Doc. No. 1-4), wherein Dr. Page-McCaw granted Plaintiff's third appeal of her

---

mere fact that someone has a disability renders him or her unqualified such that the best he or she can hope for is to be "otherwise" qualified, *i.e.*, qualified but for the fact that the disability somehow necessarily makes him or her unqualified. In the context of the second element, the concept of the plaintiff being *otherwise* qualified (as opposed to qualified) is simply inapplicable, and if a court uses the term "otherwise qualified" to define the second element, the court is being inexact and could not properly mean (and typically clearly does not intend to mean) anything other than "qualified" (with or without reasonable accommodation). To the extent that the term "otherwise qualified" appears herein, it is only because the cases quoted herein happen to use that term.

[18] Defendant here (and elsewhere) inaptly uses summary-judgment-style language when it talks about what Plaintiff (supposedly) "cannot establish." When a defendant has filed a motion for summary judgment, it is fair for the defendant-movant to argue in terms of what a plaintiff "cannot establish." But the same is not true generally (or here) with respect to a Rule 12(b)(6) motion to dismiss, where the issue is not what the plaintiff "cannot establish," but rather what the facts alleged by the plaintiff plausibly suggest (and in particular whether they plausibly suggest an entitlement to relief).

dismissal from the CRA Program. (Doc. No. 23 at 9-10). But although a defendant-movant may rely on an attachment to the plaintiff's complaint, it cannot (for reasons alluded to above) do so in a way that construes the attachment *against* the plaintiff, which is exactly what Defendant has done here. That is, Plaintiff plainly attached to her Complaint Dr. Page-McCaw's letter simply to show that Plaintiff's third appeal was denied, rather than to assert that factual statements made therein by Dr. Page McCaw are true; it is readily apparent that Plaintiff is not suggesting that such factual statements are true and instead is suggesting, if anything, that they be viewed with skepticism. Accordingly, to treat Dr. Page McCaw's statements as true (which is required to accept Defendant's argument here) would be to construe this attachment (Dr. Page-McCaw's letter) against her—which the Court cannot and will not do.

And Defendant does not endeavor to explain why the factual allegations that Plaintiff includes in the Complaint fail to plausibly suggest that she was qualified (or, at least, would have been qualified with a reasonable accommodation); Defendant does not discuss what was and was not factually alleged in this regard and whether those factual allegations plausibly suggest that Plaintiff was qualified to remain in the CRA Program (or would have been, with a reasonable accommodation). This leaves the Court—unable to rely on what Defendant advances to show that Plaintiff "cannot establish that she was otherwise qualified for her position with or without accommodation" (Doc. No. 23 at 9)—without a cognizable argument that Plaintiff's factual allegations do not plausibly suggest that she was qualified for her position.

Next, Defendant argues (alternatively) that "Plaintiff cannot establish that her requests for accommodation were objectively reasonable." (*Id.* at 11; *cf. id.* at 10 ("Plaintiff cannot establish that the accommodations she requested were reasonable")).

Count I is based on request(s) for accommodations made in January 2025 (no earlier and no later). (Doc. No. 1 at ¶ 96, 99). The Complaint is not as clear as it should be about the precise scope of Plaintiff's alleged requests for accommodations made in January 2025. In that regard, Plaintiff alleges only the following:

> 28. On January 2, 2025, Ms. Luong was diagnosed with an anxiety disorder, major depressive disorder, and post-traumatic stress disorder ("PTSD").
>
> 29. In January of 2025, Ms. Luong requested disability-related accommodations from Vanderbilt due to her mental health conditions, supported by a letter from her mental health therapist documenting her diagnoses and recommending disability-related accommodations.
>
> 30. Specifically, Ms. Luong requested reasonable accommodations to allow her to participate in a faculty advisor relationship that would accommodate her disability-related needs so she could meet the CRA Program expectations and deadlines related to her research and thesis requirements, which were set by her advisor, Dr. Oberoi.

(Doc. No. 1 at ¶¶ 28-30).

The Court construes Plaintiff as alleging that her requested accommodation underlying her claim was "to allow her to participate in a faculty advisor relationship that would accommodate her disability-related needs so she could meet the CRA Program expectations and deadlines related to her research and thesis requirements, which were set by her advisor, Dr. Oberoi." (*Id.* at ¶ 30). Even construing the Complaint in Plaintiff's favor as required, the Court cannot perceive an allegation of any other request for accommodation underlying Count I. To the extent that Plaintiff has submitted into the record, in support of her Motion for Temporary Injunction, *evidence* suggesting that additional requests for accommodations were made, that simply does not matter on the instant Motion—which must be decided without reference to such evidence.

With respect to the reasonableness of this requested accommodation, Defendant argues in particular that "[Plaintiff's] vague requests for 'flexibility' cannot be considered reasonable

because Plaintiff's delays in making progress toward her degree were substantial and predate any disability or requests for accommodation [and because] to the extent Plaintiff claims her request for assistance in obtaining a new advisor constitutes a request for accommodation, such request is also unreasonable as it would also require Vanderbilt to substantially modify or lower the standards of the CRA Program." (Doc. No. 23 at 11).

To begin with, the Court actually thinks that Defendant has given Plaintiff too much credit in claiming that she has adequately alleged that she requested an accommodation in the form of "flexibility"; the Court finds that Plaintiff has not done so. But even if she had, such a request is (just as Defendant implies) too vague to amount to a request for an accommodation. When a request for an accommodation is too vague, it is not cognizable as a request for an accommodation as required to establish a claim for failure to accommodate under the ADA and Section 504. *See, e.g.*, *Gesegnet v. J.B. Hunt Transp., Inc.*, No. 3:09-CV-828-H, 2011 WL 2119248, at *5 (W.D. Ky. May 26, 2011). *Cf. Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 487 (6th Cir. 2001) (finding, during review of an order granting summary judgment, a lack of evidence of a request for an ADA accommodation, in part because the plaintiff made only "vague references to 'light duty' job assignments"); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998) (affirming grant of summary judgment to the defendant because "Plaintiff's proposed accommodation . . . was simply too vague to reasonably inform Defendant of a reasonable accommodation"). So Plaintiff cannot sustain Count I based on any alleged accommodation in the form of "flexibility."

As for the accommodation that Plaintiff *did* request—"to allow her to participate in a faculty advisor relationship that would accommodate her disability-related needs so she could meet the CRA Program expectations and deadlines related to her research and thesis requirements,

which were set by her advisor, Dr. Oberoi," (Doc. No. 1 at ¶ 30)—the Court believes that the request arguably is too vague to the extent it is a request to "participate in a faculty advisor relationship that would accommodate her disability-related needs," (*id.*), because such a request in substance is merely a request to have her disability-related needs accommodated, and not a request for a (particular) accommodation for her disability-related needs. But Defendant does not argue vagueness on this point, and so the Court will not resolve the vagueness issue. And construing the Complaint in favor of Plaintiff as required, the Court feels compelled to treat Plaintiff here as alleging that she requested as an accommodation not just participation in a more advantageous faculty advisor relationship, but also leniency in "CRA Program expectations and deadlines related to her research and thesis requirements." (*Id.*).

It is true that "[c]ourts should afford deference to professional academic judgments concerning reasonable accommodations."[19] *Johnson v. Washington Cnty. Career Ctr.*, 470 F. App'x 433, 437 (6th Cir. 2012) (citing *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998)). It is also true that the ADA does not require "an educational institution to lower or to effect substantial modifications of standards" when making accommodations. *Kaltenberger*, 162 F.3d at 436 (quoting *Se. Cmty. Coll. v. Davis,* 442 U.S. 397, 413 (1979)). However, "the 'determination of what constitutes [a] reasonable [accommodation] is highly fact-specific, requiring case-by-case inquiry.'" *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 326 (6th Cir. 2023) (quoting *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Commissioners*, 870 F.3d 471, 489 (6th Cir. 2017)). Accordingly, despite the two truisms noted above, the Court

[19] The defendant-friendly proposition set forth in the sentence to which this footnote is attached, and the proposition set forth in the sentence immediately following it, tend to be of limited utility on a Rule 12(b)(6) motion to dismiss because on such a motion the Court can consider only limited particular information—and that information tends not to establish the defendant institution's (or defendant-institution employees') *actual* (as opposed to merely *purported*) relevant academic judgment and standards.

recognizes that the question is whether Plaintiff has alleged facts plausibly suggesting that, *in this case*, Plaintiff's requests for accommodation were objectively reasonable. The Court perceives that Plaintiff has done so, if just barely. The Court concludes that a request for some leniency in CRA Program expectations and deadlines is plausibly viewed as a "reasonable" request, depending on what the leniency is, and construed in Plaintiff's favor as required, the leniency here could have been within the realm of "reasonable." Ultimately, the evidence may suggest that Defendant is right that for one or more reasons, the request was unreasonable. But the Court cannot so conclude based on the information it properly can consider at this juncture.

Therefore, the Motion will be denied as to Plaintiff's claim in Count I for failure to accommodate.

*ii. Disability Discrimination*

The Court now turns to Plaintiff's second claim asserted in Count I: her claim for disability discrimination. With respect to this claim, Defendant states, "To establish that an individual was dismissed from an academic program in violation of Section 504 or the ADA, a plaintiff must show: '(1) she is handicapped or disabled as defined in each statute, (2) she is 'otherwise qualified' to continue in the program, and (3) she was dismissed from the program on the basis of his handicap or disability.'" (Doc. No. 23 at 12 (quoting *Kaltenberger*, 162 F.3d at 435 (quoted in *DeAngelo v. Vanderbilt Univ.*, 821 F. App'x 471, 476 (6th Cir. 2020) and *Johnson*, 470 F. App'x at 436))).[20] In responding to Defendant's argument as to her claim of disability discrimination,

[20] Left unmentioned in *Kaltenberger*, for whatever reason, is that there is a fourth element of a claim of disability discrimination under Section 504, namely that "the relevant program or activity is receiving federal financial assistance." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1180-81 (6th Cir. 1993) (quoting *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir. 1988)). But Defendant does not challenge or even mention that element here, and so the Court does not address it.

Plaintiff does not dispute this statement; for this reason, and because Defendant has accurately conveyed what *Katzenberger* says, the Court will accept Defendant's statement as true.[21]

This means that a plaintiff asserting a claim of disability discrimination, to survive a Rule 12(b)(6) motion, must allege facts plausibly suggesting each of the three elements mentioned in *Kaltenberger*. Defendant here argues, as it did in connection with Plaintiff's failure-to-accommodate claim, that "Plaintiff cannot establish she was 'otherwise qualified' to continue in the CRA Program even accepting all of her allegations as true." (Doc. No. 23 at 12). But as indicated above, that argument fails.

Next, Defendant argues:

> Plaintiff's discrimination claims also fail because she cannot establish that her dismissal was "on the basis" of any disability she may have. As set forth above, Plaintiff was dismissed for legitimate, non-discriminatory reasons: her failure to secure and maintain a major advisor and her failure to make adequate progress toward her degree. Indeed, the Associate Dean for Academic Affairs for Vanderbilt Graduate School reviewed Plaintiff's appeals related to her dismissal and concluded that the CRA Program's stated reasons for Plaintiff's dismissal were warranted. (See Doc. 1-4).

---

[21] *Kaltenberger* says exactly what Defendant says that it says. The Court wonders, however, whether *Kaltenberger* was inexact in this regard. There is every reason to believe that given its very nature and purpose, *McDonnell Douglas* applies to a claim of disability discrimination under Section 504 and the ADA, and the Sixth Circuit has made quite clear that *McDonnell Douglas* applies at least to a claim of *retaliation* under these two statutes. *See Kirilenko*, 974 F.3d at 661; *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013). The Court notes with respect to Section 504 in particular, however, that the Sixth Circuit recently held that there is no private right of action for retaliation under Section 504. *See Smith v. Michigan Dep't of Corr.*, 159 F.4th 1067, 1071 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 2791 (2026), *reh'g denied sub nom. Smith v. MI DOC*, No. 25-1028, 2026 WL 2613923 (U.S. Sept. 4, 2026). If *McDonnell Douglas* does indeed apply to a claim of disability discrimination under these two statutes, then presumably the elements stated in *Kaltenberg* are elements of an *indirect-evidence theory under McDonnell Douglas*. And if that is so, there should be a qualifier to the language in *Kaltenberger*, i.e., that to prove such a claim *via an indirect-evidence theory*, the plaintiff must establish these elements. This qualifier would make clear that a plaintiff need not necessarily establish all of these things to prove such a claim under a *direct-evidence* theory. But in any event, Plaintiff does not challenge *Kaltenberger*'s (and Defendant's) unqualified statement that a plaintiff must establish these three things—perhaps because she seemingly is committed to an indirect-evidence theory under *McDonnell Douglas* anyway, inasmuch as she invokes here the concept of "pretext" that is distinctly associated with such a theory. (Doc. No. 24 at 11). So the Court accepts the unqualified statement as valid for current purposes.

> Ultimately, Plaintiff was dismissed from the CRA Program because she failed to meet the clear requirements of the Program. She cannot establish that her dismissal was in any way related to any disability in violation of Section 504 and/or the ADA.

(Doc. No. 23 at 13). The problem with this argument is twofold and mirrors the two-fold problem with Defendant's argument concerning failure to accommodate. First, it requires construing the attachment to the Complaint at Docket No. 1-4 (Dr. McCaw's letter) against *Plaintiff*, which the Court cannot do at this stage. Second, Defendant makes no argument for why the factual allegations in Plaintiff's Complaint do not plausibly suggest that Plaintiff was dismissed from the CRA Program on the basis of her disability; Defendant does not discuss what was and was not factually alleged in this regard and whether those factual allegations plausibly suggest dismissal on the basis of disability. Perhaps such an argument would have had merit, but in any event Defendant did not make it

Therefore, the Motion will be denied as to Plaintiff's claim in Count I for disability discrimination.

2. Count II

Via Count II, Plaintiff brings a single claim, alleging that Defendant retaliated against Plaintiff for engaging in protected activity under the ADA. Defendant begins its challenge to Count II by writing:

> Because she does not have direct evidence of retaliation, her retaliation claim is analyzed under the McDonnell–Douglas burden-shifting framework. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). As such, Plaintiff bears the initial burden of establishing a prima facie case: "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer*, 743 F.3d at 1046 (citing *Shelby Cnty. Bd. of Educ.*, 711 F.3d at 697).

(Doc. No. 23 at 14 (footnote omitted)). The Court agrees with Defendant to the extent that (in the Court's view) it likely that Plaintiff does not currently have direct evidence of discrimination.[22] But that conjecture by the Court is irrelevant here because at the instant stage (i.e., on a rule 12(b)(6) motion), the Court axiomatically is assessing Plaintiff's *allegations* and not Plaintiff's *evidence*, so it does not (yet) matter what (or what *kind*) of evidence Plaintiff has; so, it does not (yet) matter whether Plaintiff has direct evidence or whether she relies or at some point will rely on direct evidence. And by the same token, it does not (yet) matter whether Plaintiff has indirect evidence or whether she intends to rely on indirect evidence. The upshot is that Plaintiff may or may not ultimately rely on direct evidence, indirect evidence, or both, and Plaintiff is not required to commit to any of those options in opposing a Rule 12(b)(6) motion to dismiss. All of this belies Defendant's claim that:

> [Plaintiff's] retaliation claim is analyzed under the *McDonnell–Douglas* burden-shifting framework. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ*., 711 F.3d 687, 697 (6th Cir. 2013)). As such, Plaintiff bears the initial burden of establishing a[n indirect evidence] prima facie case . . .

(*Id.*). The quoted assertion is untrue. In fact, Plaintiff's retaliation claim is *not* analyzed under the *McDonnell–Douglas* framework on the instant Motion, because (for the reasons intimated directly above), the *McDonnell Douglas* framework is an evidentiary standard,[23] not a pleading standard.

---

[22] The Court says this both because Plaintiff relied on the indirect-evidence prima facie standard for establishing ADA retaliation claims in her memorandum in support of her Motion for Temporary Injunction (Doc. No. 19 at 9) (citing *A.C.*, 711 F.3d at 697), and because Plaintiff does not reference any direct evidence of discrimination in the portion of that memorandum focused on the likelihood of success on the merits of Count II. Moreover, nothing in the Complaint suggests that Plaintiff is relying on anything that would constitute direct evidence. Given the apparent lack of assertion of the existence of direct evidence, the Court here forgoes any discussion of what does and does not constitute "direct evidence" of retaliatory motive.

[23] It bears mentioning that as an evidentiary standard, the *McDonnell Douglas* framework *is* properly employed (unless a plaintiff appears to be relying exclusively on direct evidence) on a motion for a TRO or preliminary injunction (like Plaintiff's Motion for Temporary Injunction), because success on such a motion requires an *evidentiary showing* by the plaintiff.

*Swierkiewicz*, 534 U.S. at 510. Accordingly, Plaintiff need not plead each element of an indirect-evidence prima facie case in order to survive Defendant's Motion.[24] *Keys*, 684 F.3d at 609 ("[I]t was error for the district court to require [the plaintiff] to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss."). Instead, "the question is not whether Plaintiff has pled a *prima facie* case[], but, instead whether Plaintiff has complied with Rule 8(a) [as construed in *Iqbal* and *Twombly*] and given the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Benick v. Morrow Cty. Health Dist.*, Nos. 2:20-cv-900, 2:20-cv-1058, 2020 WL 3045783, at *6 (S.D. Ohio June 8, 2020) (internal quotation marks and citation omitted) (discussing the inapplicability, at the motion to dismiss stage, of *McDonnell Douglas* in the specific context of claims brought under the FMLA). Bearing as it does the burden of explanation, Defendant cannot prevail on its Motion with respect to this claim, unless it explains why the answer to that question is "no." Having not addressed that question, and instead having addressed the inapplicable question of whether Plaintiff has pleaded all elements of an indirect-evidence prima facie case, Defendant has failed to meet its burden of explanation, and the Motion is denied as to Count II.[25]

3. <u>Count III</u>

That leaves Count III, wherein Plaintiff brings a single claim, for breach of contract. Under Tennessee law, which undisputedly appears applicable here, there are three elements of a claim of

---

[24] Although a plaintiff is not *required* to plead all the elements of an indirect-evidence prima facie case under *McDonnell Douglas*, courts have held that a plaintiff that has done has satisfied the plausibility requirement on a Rule 12(b)(6) motion. *See Vandine v. Trinity Health Sys.*, No. 2:14-CV-1242, 2015 WL 5216715, at *4 (S.D. Ohio Sept. 8, 2015) (collecting cases).

[25] Aspects of Defendant's argument here (going towards the inapplicable question), in particular regarding causation, perhaps could have supported a "no" answer to the applicable question. But the Court will not do Defendant's work for it by reframing aspects of the inapplicable argument as aspects of the applicable argument, and then seeing whether Defendant prevails on the applicable argument that Defendant did not actually even make in the first place.

breach of contract. Specifically, "[i]n a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). "In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach." *Id.*

Defendant concedes that "the Sixth Circuit has reaffirmed that 'the student-university relationship is contractual in nature.'" (Doc. No. 23 at 17 (quoting *Sifuna v. S. Coll. of Tenn., Inc.*, No. 17 5660, 2018 WL 3005814, *2 (6th Cir. Apr. 5, 2018)). And the undersigned previously has expressed that an implied contractual relationship can exist between a school (Defendant) and student (Plaintiff), with the relationship defined by the relevant student manual and other relevant documents. *Joiner v. Meharry Med. Coll.*, No. 3:18-CV-00863, 2020 WL 7027505, at *5-8 (M.D. Tenn. Nov. 28, 2020) (Richardson, J.); *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 892–93 (M.D. Tenn. 2022) (Richardson, J.) (noting, *inter alia*, that catalogs, manuals, student handbooks, bulletins, circulars and regulations of a university help define an implied contractual relationship between a student and the university).

Defendant is accurate when stating that "courts have been hesitant to substitute their own judgment for the judgment of academic institutions." (Doc. No. 23 at 17 (quoting *Doherty v. Southern College of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988) ("judicial intervention in any form should be undertaken with the greatest reluctance" in the academic context (citations omitted)))). But a court cannot very well be accused of "interven[ing]" in the academic context merely by finding that a student-plaintiff has alleged facts plausibly suggesting a breach of plausible terms of her contract with an academic institution.

Defendant makes several arguments in support of dismissal of Count III. The first is that "Plaintiff has failed to identify any enforceable obligation breached by Defendant." (Doc. No. 23 at 17). Defendant argues, more specifically, that "Plaintiff's vague references to provisions of the student handbook, Probation Policy, and Overview of Requirements are insufficient to set forth a claim for breach of contract" and that "Plaintiff fails to point to any specific provision in these documents that requires a student in the CRA Program to receive timely feedback, be placed on probation, or receive a professional performance concern before the student can be dismissed from the CRA Program." (*Id.*).

Plaintiff counters by asserting (accurately) that Defendant does not dispute that she adequately alleged that "Defendant did not provide her with notice of a failure to meet program expectations, did not provide her with an improvement plan, and did not place her on probation." (Doc. No. 24 at 15). The Court accepts that Plaintiff has adequately alleged Defendant did not do any of these things and that the Complaint *identifies* these as things Defendant (allegedly) was required to do under its alleged contract with Plaintiff—i.e., the things the non-doing of which amounted to a breach of contract. The question is thus whether Plaintiff has set forth factual matter *plausibly suggesting* that the non-doing of these things amounted to a breach of contract—i.e., that the parties' (alleged) contract required Defendant to do these things.

In the face of Defendant's above-referenced argument for why this question should be answered in the negative, Plaintiff cites to paragraphs in, and attachments to, the Complaint that in her view plausibly suggest that the question should be answered in the affirmative. (Doc. No. 15-17). The Court concludes that Plaintiff is correct that at least *if* the parties' contract is interpreted broadly, and in Plaintiff's favor, those facts plausibly suggest that Defendant was contractually obligated to do the above-referenced things. The question thus becomes whether the

Court should determine how (and how broadly) the contract should be construed at the instant motion-to-dismiss phase. The Court previously has addressed this kind of issue:

> When a contract is unambiguous on a particular point at issue, a court may determine the interpretation on a motion to dismiss as a matter of law, but when a contract is ambiguous, a court should not interpret the contract at the motion to dismiss stage. *See e.g., McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *3 (E.D. Tenn. Mar. 22, 2007) ("Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. In such a situation, contractual interpretation is a matter of law and may be addressed on a motion under Rule 12. When a contract's terms are ambiguous, however, interpretation is a question of fact and is not appropriately decided in the context of Rule 12." (internal citations omitted)); *Griggs v. LF Prod. PTE Ltd.*, No. 1:12-CV-00193, 2013 WL 4499131, at *4 (M.D. Tenn. Aug. 16, 2013) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." (quotation omitted)); *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) ("In reviewing a Rule 12(b)(6) motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor. A contract is ambiguous if its words may reasonably be understood in different ways. A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6). In other words, the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." (internal citations omitted and cleaned up)); *BorgWarner Ithaca LLC v. Principal Mfg. Corp.*, No. 18-CV-13970, 2019 WL 1952858, at *3 (E.D. Mich. May 2, 2019) (applying *Ajuba*); *cf. Perry v. Allstate Indem. Co.*, 953 F.3d 417, 432 (6th Cir. 2020) (Readler, J. concurring in part and dissenting in part) ("While it may be the majority view, we cannot say at this threshold stage, as did the district court, that [Defendant's] view is the only potentially reasonable interpretation of the policy language. True, as [Defendant] notes, one court's aberrant decision cannot unsettle the meaning of well-defined legal terms. But that is not what we have here. Both [Defendant] and [Plaintiff's] views have ample support. All things considered, including the somewhat detailed discussion necessary to explain these competing views, we find that, at this stage, both views are reasonable. Under Ohio law, [Plaintiff's] claim therefore survives [Defendant's] Rule 12(b)(6) motion.").
>
> There is also some case law that indicates (without distinguishing between ambiguous and unambiguous contracts) that it is generally inappropriate to interpret a contract on a motion to dismiss. *DeNune v. Consol. Capital of N. Am., Inc.*, No. 3:02CV7241, 2004 WL 1474653, at *2 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss."); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, No. 2:03-MD-1565, 2006 WL 2849784, at *7 (S.D. Ohio Oct. 3, 2006) ("The Court, though, will not resolve a conflict in contract

> interpretation on a motion to dismiss."); *Exact Software N. Am., Inc. v. Infocon Sys., Inc.*, No. 3:03CV7183, 2004 WL 952876, at *5 (N.D. Ohio Apr. 16, 2004) (same). Taking a somewhat different position, the Court believes that it is appropriate to interpret a contract on a motion to dismiss—but only if the contract is unambiguous.
>
> The upshot is that the Court needs to (i) first determine whether the [contract at issue] is unambiguous and, (ii) if so, apply its unambiguous meaning but, if not, decline to interpret the contract and instead deny Defendant's Motion inasmuch as it relies on the Court interpreting the contract (in Defendant's favor).

*Thunder Roads Mag./Thunder Publ'g, LLC v. Smith*, No. 3:23-CV-00395, 2023 WL 8532696, at *7 (M.D. Tenn. Dec. 8, 2023) (footnote omitted).[26] The Court adheres to these views and finds them applicable in the present case. Defendant, despite bearing the burden of explanation as the movant, does nothing to even attempt to persuade the Court that the parties' (alleged) contract is unambiguous, such that the Court can rule on its construction (including with respect to what Defendant was and was not obligated to do thereunder) as a matter of law. Instead, Defendant seems to assume that the parties' contract *unambiguously* requires a particular construction—naturally, a narrow one that goes in its favor. But the Court cannot assume such a thing; it perceives various unresolved issues regarding the scope of the parties' contract (such as what documents should be considered part of, or at least relevant to construing the parties' contract and what the parties' intention was considering the applicable documents and anything else relevant under the circumstances here at issue) that preclude any such assumption.

Having not received from Defendant, or discerned on its own, reasons to conclude that the contract is unambiguous, the Court declines to seek out and arrive at an unambiguous construction

[26] Although the undersigned did not so state in *Thunder Roads Mag.*, some courts have stated a view somewhere between the undersigned's above-stated view (that it is appropriate to interpret a contract on a motion to dismiss, but only if the contract is unambiguous) and the above stated alternative view (that it is generally inappropriate to interpret a contract on a motion to dismiss, apparently irrespective of whether the contract is ambiguous). Under that (third) view, it is generally inappropriate to interpret a contract on a motion to dismiss, "especially if" the contract is an ambiguous one. *See Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 971 (S.D. Ohio 2022) ("Generally, interpretation of contracts—especially ambiguous ones—is a question of fact inappropriate for resolution on a motion to dismiss.").

and then declare that Plaintiff's alleged facts fail to plausibly suggest a breach of the parties' contract under the construction. In other words, the Court declines to find that the contract must be interpreted in such a way that Plaintiff's factual allegations as a matter of law fail to plausibly suggest a breach of the parties' contract.

Even if Plaintiff has made factual allegations plausibly suggesting that the student handbook and related policies form a contract between Plaintiff and Defendant, and that Defendant breached this contract, this is not the end of the breach-of-contract analysis here. Instead, challenging an additional element of Plaintiff's breach-of-contract claim, Defendant next argues that Plaintiff "cannot establish damages resulting from a breach." (Doc. No. 23 at 19). Defendant notes that "Paragraph 117 of Plaintiff's Complaint sets forth her claimed damages of 'loss of educational opportunities, emotional distress, damage to reputation, and financial loss due to removal of her financial support from the CRA Program.'" (Doc. No. 23 at 19 (quoting Doc. No. 1 at ¶ 117)). Defendant then cites case law suggesting that these categories of damages are not recoverable, at least in the instant kind of action, because such damages are speculative. Defendant may have a point there, although the last category (financial loss due to removal of her financial support from the CRA Program) at least seemingly is susceptible to non-speculative calculation. But in any event, Plaintiff in her Response asserts that she has alleged damages of a far less speculative nature (which, as it happens, may fit the description of and financial loss due to removal of her financial support from the CRA Program). (Doc. No. 24 at 18). In so asserting, Plaintiff cites ¶2 (a) of the prayer for relief).[27] That subparagraph requests damages based on, *inter alia*, "Luong losing her teaching assistant stipend, tuition scholarship, health insurance, conference funds, and professional development funds for the fall 2025 semester." (Doc. No. 1 at 20-21).

[27] Here, Plaintiff also cites paragraph 112 of the Complaint, which is not at all on point; this seemingly was a scrivener's error on Plaintiff's part.

Plaintiff then cites two cases suggesting that such damages are recoverable rather than being unrecoverable as too speculative. In its Reply, Defendant does not address this argument, and the Court finds Plaintiff's particular argument here persuasive. Accordingly, Count III is not subject to dismissal for lack of resulting recoverable damages, although it remains possible that ultimately some categories of damages sought by Plaintiff may be unrecoverable.

Finally, Defendant argues that Plaintiff's claim fails because (according to Defendant) Plaintiff breached her obligations to Defendant before Defendant breached any obligations towards her. (Doc. No. 23 at 19-20). But Defendant's indispensable premise here—that Plaintiff breached her obligations to Defendant, by failing both to make satisfactory academic progress towards her degree and to meet expectations listed in Plaintiff's "Program of Studies document"—relies entirely on construing Docket No. 1-4 against Plaintiff (i.e., by accepting as true factual statements made therein by Defendant's employee in derogation of Plaintiff). (*Id.* at 20). Once again, the Court notes that the Court cannot construe attachments (like Docket No. 1-4) to a complaint against a plaintiff. So this argument fails.

For all of these reasons, the Motion will be denied with respect to Count III.

## CONCLUSION

In terms of overall substance, Defendant's arguments in the Motion potentially could gain traction later in this litigation. But at the present juncture, they can be supported only by certain information. In the Court's view, Defendant repeatedly has relied on information (and, for that matter, assumptions) that are not properly cognizable on a Rule 12(b)(6) motion to dismiss. It is almost as if Defendant misapprehends what it is that is supposed to be assessed on a Rule 12(b)(6) motion to dismiss, and how exactly it is to be assessed. So, Defendant's arguments fail at this

juncture, pending further evidentiary/factual development later in this proceeding, and do not justify dismissal now.

For the reasons described herein, Plaintiff's Motion (Doc. No. 23) will be **DENIED** in its entirety, albeit with the particular caveats that the Court has included herein.

An appropriate accompanying order will be entered.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE